IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) | Criminal No. 3:20-cr-42 |
| v. | ) ) ) | GOVERNMENT'S RESPONSE TO |
| TERRY LEE DOUGLAS III, | ) ) | DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE |
| Defendant. | ) ) |  |

The United States Attorney, through Assistant United States Attorney Clifford R. Cronk III, responds in opposition to the defendant's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) as follows:

### I. Procedural Background[1]

On May 1, 2020, Defendant Terry Lee Douglas III (Douglas) was charged by criminal complaint with drug charges. (Doc. 1.) On May 12, 2020, he was charged in a multi-count indictment including Conspiracy to Manufacture, Distribute, and Possess with Intent to Distribute 50 grams and more of actual methamphetamine and distribution and possession with intent to distribute methamphetamine. (Doc. 20, 21.) On December 1, 2020, Douglas reached a plea agreement with the Government and plead guilty to Count 1 (Conspiracy). (Doc. 64, 65.) At sentencing, the Court attributed more than 1.5 kilograms of "ice" to Douglas and found he had

---

[1]In this pleading, the following abbreviations will be used:

"Doc." -- district court clerk's docket, followed by docket entry; and
"PSR" -- presentence report, followed by page number of the originating document and paragraph number.

1

an aggravating role in the offense. His Total Offense Level was 36 and he was assigned a Criminal History Category of IV producing a sentencing range of 262 to 327 months. On April 26, 2021, Douglas was sentenced to 200 months to be followed by 5 years of supervised release. (Doc. 83.) Douglas appealed. (Doc. 85.) In November of 2021, the sentence was affirmed. (Doc. 99.)

Then, on August 23, 2022, Douglas filed a *pro se* motion seeking compassionate release. (Doc. 101.) The Federal Defender filed a non-appearance on the following day. (Doc. 102.)

## II.   Offense Conduct

Douglas was identified as an "ice" methamphetamine dealer and he managed another in his drug trafficking activities. In January and February of 2020, in Burlington, Iowa, Douglas was distributing "ice" that he obtained from Jeffrey Goins, another twice-convicted drug defendant. In December of 2019, Goins sold Douglas a half pound of "ice" for $3,000. The following week, Goins sold Douglas another half pound. Douglas then moved up to pounds and got a pound of "ice" from Goins every 12 days from late December to February 2020.

On January 4, 2020, in Burlington, Iowa, police encountered Douglas in possession of a zippered bag containing three (3) baggies of "ice" weighting 112.70 grams, 113.40 grams, and 5.85 grams. Also located in the bag was a digital scale that Douglas used for weighing drugs for distribution. On February 14, 2020, Douglas, through Geneva Hudson, obtained a pound of "ice" from Goins. (PSR ¶ 13.)

Law enforcement purchased "ice" from Douglas on multiple occasions. (PSR ¶¶ 12, 14.)

### III.   Douglas's motion

Douglas has moved *pro se* for a reduction in sentence to time-served under 18 U.S.C. § 3582 citing his serious medical conditions, poor health, the fear of contracting COVID-19 and monkey pox, and the effect his incarceration has on his family.[2] He asserts that the § 3553(a) factors justify relief. If released, Douglas expects to live in Iowa with his wife; he and she claim they recently reconciled.

### IV.   Government response in opposition

Douglas does suffer from serious medical conditions. But his conditions which include diabetes Type 2, cardiomyopathy, obesity, hypertension, heart failure, and high cholesterol, are treated and treatable. He is at a very low risk of contracting COVID-19, is unlikely to have serious complications of he does, and he is not more vulnerable at FCI Greenville than if released. He has only served about 27 months of a 200-month sentence and remains a danger to the community. The § 3553(a) factors weigh against release.

#### A. Authorities and Argument

##### 1. General Provisions of Compassionate Release Statute.

As a general rule, a "court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One exception is the relief available under §

---

[2] With his motion, Douglas provides medical records from an assessment from the Great River Medical Center in Iowa conducted in March of 2020 before he was sentenced in this case. The PSR contains diagnoses and assessments. (PSR ¶¶ 86-88.)

3582(c)(1)(A), sometimes described as "compassionate release." *United States v. Taylor*, 28 F.4th 929, 930 (8th Cir. 2022) (per curiam). That provision permits the Court, "to reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable" if it finds that "such reduction is consistent with applicable policy statements issued by the Sentencing Commission" and "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Before 2018, only the Director of the BOP could seek compassionate release on behalf of a federal inmate. *See id.* § 3582(c)(1)(A) (2002) ("[T]he court, upon motion of the Director of the Bureau of Prisons, may reduce the term of imprisonment."). In the First Step Act of 2018, Congress amended the statute to permit prisoners to file their own motions directly with the sentencing court. *See* Pub. L. No. 115-391, § 603, 132 Stat. 5194, 5239.

### 2. No statutory definition of "Extraordinary and Compelling Reasons"

Although Congress has made clear that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason," 28 U.S.C. § 994(t), it has not otherwise dictated the kinds of circumstances creating an extraordinary and compelling justification for compassionate release. Instead, it charged the United States Sentencing Commission with "promulgating general policy statements" to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." *Id.* Section 1B1.13 of the Sentencing Guidelines provides

4

that a court may reduce a prison term if it finds, among other factors, that "extraordinary and compelling reasons warrant the reduction." U.S.S.G. § 1B1.13(1)(A). In its commentary to § 1B1.13, the Sentencing Commission has enumerated a finite set of circumstances that qualify as extraordinary and compelling:

    (A)    Medical Condition of the Defendant.—

        (i)    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

            (I)    The defendant is—suffering from a serious physical or medical condition.

            (II)    suffering from a serious functional or cognitive impairment, or

            (III)    experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to pro- vide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

    (B)    Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

    (C)    Family Circumstances.—

        (i)    The death or incapacitation of the caregiver of the defendant's minor child or minor children.

>> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists . . . an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

*Id.* cmt. n.1. Section 1B1.13 has not been revised since the passage of the First Step *Act*, and its commentary continues to suggest that compassionate release "may be granted only upon motion by the Director of the [BOP.]" *Id.* cmt. n.4. For this reason, most circuit courts have questioned whether § 1B1.13 remains an "applicable" policy statement to which district courts must adhere under § 3582(c)(1)(A). *See United States v. McCoy*, 981 F.3d 271, 282 (4th Cir. 2020); *United States v. Shkambi*, 993 F.3d 388, 392–393 (5th Cir. 2021); *United States v. Jones*, 980 F.3d 1098, 1109–1111 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180–1181 (7th Cir. 2020); *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021); *United States v. McGee*, 992 F.3d 1035, 1050 (10th Cir. 2021). *But see United States v. Bryant*, 996 F.3d 1243, 1247–66 (11th Cir. 2021) (finding § 1B1.13 remains an "applicable" policy statement to which district courts must adhere).

The Eighth Circuit has repeatedly declined to rule on this issue directly. *See, e.g., United States v. Crandall*, 25 F.4th 582, 585 (8th Cir. 2022). Instead, it reviews whether a district court recognized its discretion in determining whether there exist extraordinary and compelling circumstances for compassionate release. *United States v. Marcussen*, 15 F.4th 855, 859 (8th Cir. 2021) ("So long as a district court does not explicitly limit its discretion to the factors identified in USSG § 1B1.13 and its

commentary, it is appropriate for this court to ignore what is, in substance, no more than an academic debate."); *United States v. Gater*, 857 F. App'x 259, 261 (8th Cir. 2021) (unpublished per curiam) (declining to decide "whether the statute supersedes the list of circumstances set forth in the policy statement" where the district court "did not limit its analysis to only those circumstances listed in th]e commentary to U.S.S.G. § 1B1.13"); *United States v. Loggins*, 966 F.3d 891, 892 (8th Cir. 2020) ("We need not decide whether the statute supersedes the policy statement in this respect, because the district court's order shows that it considered the circumstances urged by Loggins and found them insufficient.").

Under the Eighth Circuit's approach, the extraordinary and compelling circumstances laid out in the commentary to § 1B1.13 are "advisory not prohibitive." *Marcussen*, 15 F.4th at 859. Thus, district courts are not constrained to ensure a movant's reasons fit the Sentencing Commission's criteria hand-in-glove. Nevertheless, "§ 1B1.13 and its commentary may not be ignored." *Id.* Even in the amended language of § 3582(c)(1)(A), Congress has clearly instructed district courts to consider whether granting relief is consistent with the policy of the Sentencing Commission. Straying too far from the basic "guideposts" of § 1B1.13 runs the risk "of expanding the compassionate release system into, essentially, a discretionary parole system" under which a court could "reduce any sentence it disagrees with for any reason it concludes is extraordinary without respect to the Commission's guidance." *United States v. Crandall*, No. 89-cr-00021, 2020 WL 7080309, at *6 (N.D. Iowa Dec. 3, 2020), aff'd, 25 F.4th 582. Therefore, this Court should look to the broad categories

identified in the § 1B1.13 commentary—i.e., health, age, and family circumstances—as a helpful but non-binding guidepost for determining whether a prisoner has alleged an extraordinary and compelling reason for release.

The burden is on defendant to show that he is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A). *United States v. Korn*, No. 15-CR-81S, 2020 WL 1808213, at *6 (W.D.N.Y. Apr. 9, 2020); *United States v. Dembry*, No. 3:06-cr-0587, Document 125, at 5 (S.D. Ia. Mar. 28, 2020) (Jarvey, C.J.); cf. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2019) (burden is on defendant to show a sentence reduction is warranted under 18 U.S.C. § 3582(c)(2)). Under the statute, this court may reduce a term of imprisonment if defendant establishes that: (1) "extraordinary and compelling reasons" support a reduction; (2) the reduction is consistent with the Sentencing Commission's applicable policy statements; (3) the factors set forth in 18 U.S.C. § 3553(a) support the reduction; and (4) the defendant is not a danger to any victim or the community as provided in 18 U.S.C. § 3142(g). 18 U.S.C. § 3582(c)(1)(A); USSG §1B1.13.

Compassionate release on the basis of a medical condition is "rare" and "extraordinary." *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019); *United States v. Willis*, 352 F. Supp. 3d 1185, 1188 (D.N.M. 2019). Many federal inmates "have medical conditions that make confinement more difficult," and this alone is not a basis for relief. *United States v. Malone*, 2019 WL 3337906, at *2 (W.D. Va. July 25, 2019).

### 3. Douglas has not shown he is at risk of complications due to COVID-19 or monkey pox.[3]

Douglas does not have a terminal illness, COVID-19, or monkey pox. He is not experiencing a serious deterioration in physical or mental health. Medical records do show Douglas has suffered from and presently suffers from a number of conditions that may make him particularly susceptible to COVID-19, including Type 2 diabetes, hypertension, obesity and heart failure; conditions "from which he or she is not expected to recover."[4] U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I). He has not contracted monkeypox and, even if he did, according to the World Health Organization, monkeypox has a low fatality rate and is treatable. https://www.who.int/news-room/fact-sheets/detail/monkeypox (last visited September 7, 2022).

But, a review of BOP medical records reveals Douglas is seen and monitored regularly by medical staff and all of his conditions are either resolved or are being treated successfully. In fact, there is no information that Douglas's Activities of Daily Living (ADLs) and Instrumental Activities of Daily Living (IADLs) have deteriorated. Moreover, FCI Greenville (Illinois) has three inmate cases of COVID-19 reported and those inmates are quarantined until it is safe for them to return to the inmate population.[5] https://www.bop.gov/ coronavirus pdf (last visited

---

[3] The BOP has a well-established history of managing and responding to communicable disease outbreaks, like Ebola and influenza. As a result, the BOP has protocols and practices that can and will be implemented to mitigate against and, if necessary, respond to any outbreak in our environment, including monkeypox.
https://www.bop.gov/resources/news/20220808_bops_response_to_mitigate_monkeypox.jsp (last visited September 7, 2022).

[4] Douglas's health conditions were known at the time of sentencing. (PSR ¶ 78.)

[5] Inmates exhibiting signs or symptoms of COVID-19 are placed in isolation in accordance with CDC guidelines. Inmates whose conditions cannot be managed within the institution are sent to the local

September 7, 2022);

https://www.bop.gov/coronavirus/docs/correcting_myths_and_misinformation_bop_covid19. Thus, Douglas has not shown that BOP "cannot adequately manage the pandemic" within FCI Greenville or that the facility is unable to treat him. *Gamble*, 2020 WL 1955338, at *4-*5.

Courts should deny motions for release, even for inmates "at extremely high risk to contract COVID-19," where the defendant has failed to show that the facility's response to the virus was inadequate, or failed to show "any particularized risk" to himself. *See United States v. Ciccone*, 2020 WL 1861653, at *3 (N.D. Ohio Apr. 14, 2020); *Moskop*, 2020 WL 1862636, at *1-*2; *see also Korn*, 2020 WL 1808213, at *6 (denying release, despite pandemic, where defendant's serious heart condition was "essentially the same as when he arrived" at the prison). "The underlying arguments for release from prison based on the coronavirus pandemic depend at least on allegations that the risk of contracting COVID-19 in a prison is higher than the risk outside the prison and that the inmate's preexisting medical condition increases that individual's risk of experiencing a serious, or even fatal, case of COVID-19." *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021). Accordingly, Douglas has failed to show that he is experiencing a serious deterioration in physical or mental health or presents "serious physical or medical condition(s) . . . that substantially diminish[ ]

---

hospital for management. Testing of inmates within the institution and by the local hospital is conducted in accordance with CDC and local health department guidance.
https://www.bop.gov/coronavirus/docs/correcting_myths_and_misinformation_bop_covid19.pdf (last visited September 7, 2022).

the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."

### 4. Douglas is vaccinated for COVID

According to BOP medical records, Douglas was vaccinated for COVID-19 in June and July of 2021 with the Pfizer vaccine.  The vaccine has been shown to be highly effective in the treatment of XCPVID-19 reducing the likelihood of complications from the virus. https://www.cdc.gov/mmwr/volumes/70/wr/mm7037e3.htm?s_cid=mm7037e3_x (extensive study in five Veterans Administration hospitals found "COVID-19 mRNA vaccines are highly effective in preventing COVID-19–associated hospitalization in this older, racially diverse population of predominately male U.S. veterans.") (accessed Sept. 7, 2022).

At this time, this Court's assessment should be driven by the prevailing scientific view that vaccination makes extremely rare, and possibly eliminates entirely, the risk of severe disease from the virus.  Absent a dramatic change in the current scientific assessment regarding the efficacy of the vaccines, vaccination should bring to an end this unprecedented period in which compassionate release has been available based on the mere threat of the virus. Instead, sentence reductions based on medical conditions once again should be limited to extraordinary conditions that are terminal or severely limit an inmate's ability to function in a correctional setting. *See, e.g.*, *United States v. Willis*, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019) (Johnson, J.) (relief is "rare" and "extraordinary"); *United States v. Lisi*, 440 F. Supp.

3d 246, 251 (S.D.N.Y. 2020) (Failla, J.) ("a defendant's medical condition must be one of substantial severity and irremediability"); *United States v. Polnitz*, 2020 WL 1139836, at *2 (E.D. Wis. Mar. 9, 2020) (Pepper, J.) (must be extraordinary; "Many inmates suffer from pain and mental illness."). Douglas has not made that showing.

### 5. The 18 U.S.C. § 3553(a) factors also weigh against granting compassionate release.

Title 18, United States Code, Section 3553(a) mandates a sentence that is sufficient to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; it must afford adequate deterrence to criminal conduct; protect the public from further crimes of the defendant; and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. In addition, the Court is to consider "the nature and circumstances of the offense and the history and characteristics of the defendant" and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(1), (a)(6).

Douglas is 36 years old. Douglas's criminal record includes numerous offenses involving violent and abusive conduct and includes a robbery adjudication, two separate felony drug convictions, and multiple serious driving offenses. (PSR ¶¶ 38, 41, 45, 46, 48-52.) He managed others in his drug operation and possessed pound quantities of "ice" for distribution. His medical conditions were known to him when he engaged in criminal activities that put him in federal prison. Moreover, according

to BOP records, in February of 2022, Douglas was caught with a "stinger" (an electrical device with an electric plug and conductors) and he was sanctioned by the BOP.

With knowledge of Douglas's conduct, history, and health conditions, the district court sentenced Douglas to 200 months in prison. Douglas has served a fraction of that sentence. Releasing him now would violate the § 3553(a) factors as it would undermine respect for the law, expose the public to further crime by the defendant, and would further undermine the seriousness of his offense conduct. Releasing Douglas now would not constitute just punishment. The need to protect the public, provide just punishment, and promote respect for the law provides compelling reasons to deny Douglas relief.

Because Defendant has failed to satisfy the requirements of 18 U.S.C. § 3582(c)(1)(A), the Court should deny defendant's motion for compassionate release.

Respectfully submitted,

Richard D. Westphal
United States Attorney

By: /s/ Clifford R. Cronk III
Clifford R. Cronk, III
Assistant United States Attorney
U.S. Courthouse, Suite 310
131 East Fourth Street
Davenport, Iowa 52801
Tel: (563) 449-5432
Fax: (563) 449-5433
Email: cliff.cronk@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on September 7, 2022, I electronically filed the foregoing with the Clerk of Court using the CM ECF system. I hereby certify that a copy of this document was served on the parties or attorneys of record by: U.S. Mail on September 8, 2022.

UNITED STATES ATTORNEY

By: */s/ Cliff Cronk*